## In re PAYMAN.

## Ex parte ROBERT REIS & CO. et al.
### No. 292.

Circuit Court of Appeals, Second Circuit.

April 7, 1930.

Jay Leo Rothschild, of New York City, for appellants.

Sidney Wedeen, of New York City, for appellees.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

Three of his creditors, Reis and two others, filed an involuntary petition in bankruptcy against Payman on November 13, 1929. Struckler and Levine, who had been acting as Payman's attorneys, then held in their hands one thousand dollars, the proceeds of a sale of his property. On that day or the next, Reis's attorney advised Struckler and Levine of the pendency of the

petition, and asked them to appear for Payman, which they refused to do, though they in turn asked him to have a receiver appointed to whom they might pay the money. Instead of waiting till he did this, they distributed eight hundred dollars ratably among all Payman's creditors, including the petitioners, according to their claims, and kept the rest for their fees. Thereupon the petitioners obtained a rule nisi from the court on the return of which Struckler and Levine, as respondents, were summarily directed to pay the whole amount to a receiver who was appointed in the order. The petitioners now concede that as to the amount withheld for the respondents' fees the order cannot stand, but they seek to support it for the balance.

■ While this is a summary proceeding to reduce to possession the assets of the estate, the respondents raise no adverse claim to the fund, and as to jurisdiction only argue that as they have parted with possession, the only remedy is by action or suit. Whatever may have been the law before May v. Henderson, 268 U. S. 111, 45 S. Ct. 456, 69 L. Ed. 870, that decision ended any doubts. There, assignees for creditors had deposited the bankrupt's money in a bank of which one of them was president, and allowed the account so arising to be set off against a note of the bankrupt. The court held them personally, expressly repudiating the notion that because of the president's relation to his bank, he might be regarded as still in control of the extinguished chose in action. The decision squarely held that a court of bankruptcy has power to compel a person to make restitution, who has disposed of the bankrupt's funds with knowledge of the petition. We agree with the petitioners on the point of jurisdiction.

■ On the merits we share the indignation of the learned trial judge and his belief that the respondents' conduct was in direct defiance of the statute. Administration in bankruptcy involves more than ratable distribution of the proceeds among those supposed to be the creditors; it would result in the gravest abuses to countenance this as its equivalent. The bankrupt must be examined, his conduct and estate investigated, his property collected and claims against it liquidated. All this is a necessary prelude to the declaration of dividends, and whoever prevents it even by equal distribution to those assumed to be creditors frustrates the proceeding. But the creditors who take the money with knowledge of the proceedings—as the petitioners here had since the petition was their own—are equally guilty. Indeed it was said obiter in Knapp & Spencer Co. v. Drew, 160 F. 413, 416 (C. C. A. 8), that they commit the crime of receiving the bankrupt's property with intent to defeat the act (section 29(b) (4), 11 USCA § 52(b) (4), and it is hard to see how this conclusion can be escaped. Whether the bankrupt, or, as here, his attorney, is also criminally liable, is not so clear. Certainly both have been in concert to defeat the statute, the petitioners quite as much as the respondents.

■ This is a civil proceeding and for the reasons just given both are in pari delicto. The petitioners are therefore in no position to press the claim on their own behalf while they keep a part of the very fund with whose diversion they seek to charge the respondents. Theirs is, if anything, the more imperative duty of the two; they have the very fruits of the wrong, and they propose to keep them. Nothing could be more inequitable than to throw upon the respondents the burden which they should themselves primarily bear. Nor may they vicariously speak for the other creditors, quite aside from whether, if there were any not in like case, we should ignore the petitioners' individual disqualification. All the creditors have received their share of the fund, and all are keeping it; all are as much in the wrong as the petitioners, though all may not have exposed themselves to prosecution, since only the petitioners may have known of the petition. As little as these can any of the creditors pass the loss to the respondents, however culpable; and the same would be true, if the receiver made the claim, for he is no more than a representative of all the creditors. Whether if a single one came forward and offered to do justice, he could proceed against the rest and make the respondents stand guarantors for those who failed to disgorge, we need not say. All appear content; the only appropriate relief is disciplinary, and that must originate in the District Court.

We have found no decision on the point, but the closest analogy is those cases in which the creditors have induced or connived at the act of bankruptcy on which they found their petition for adjudication. Simonson v. Sinsheimer, 95 F. 948 (C. C. A. 6); Clark v. Henne, 127 F. 288, 297 (C. C. A. 5); Moulton v. Coburn, 131 F. 201 (C. C. A. 1); Ohio Motor Car Co. v. Eiseman Magneto Co., 230 F. 370 (C. C. A. 6); In re Lucey Mfg. Corp., 9 F.(2d) 313 (C. C. A. 2). The reasons for

refusing relief here are even stronger. The only persons whom we can conceive to have any real interest in the motion, are those who might profit by the administration; their interest the law does not recognize.

Order reversed; petition dismissed.