## In re GOLDMAN–ROSENZWEIG CO., Inc.
## AMERICAN WOOLEN CO., Inc., et al. v.
## AMERICAN SILK MILLS, Inc.
### No. 392.

Circuit Court of Appeals, Second Circuit.

May 29, 1933.

Hays, Hershfield, Kaufman & Schwabacher, of New York City (Henry H. Kaufman, Harold P. Seligson, and Sydney C. Weinstein, all of New York City, of counsel), for appellants.

Reit & Kaminsky, of New York City (Hyman J. Reit, of New York City, of counsel), for respondent.

Henry I. Fillman, of New York City, for American Silk Mills.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

On April 5, 1932, the appellants, as creditors, filed a petition in bankruptcy against the alleged bankrupt, alleging as acts of bankruptcy preferential payments made to creditors and that, on December 18, 1931, the alleged bankrupt made an assignment for the benefit of its creditors. An answer was filed by the alleged bankrupt denying the claims against it or that it committed acts of bankruptcy and denying further that the payments mentioned in the petition were preferential or made with intent to prefer. As a separate defense it was alleged that the general assignment made for the benefit of creditors was acquiesced in by the appellants and that they were estopped from filing an involuntary petition. A creditor, the American Silk Mills, Inc., also filed an answer.

The issues raised by the petition and answers were referred to a special master. All issues raised were withdrawn except one as to whether the petitioning creditors were estopped from filing the petition in bankruptcy by virtue of their having procured the assignment for the benefit of creditors and having thereafter acquiesced therein. The special master held they were not so estopped. The District Judge disagreed and dismissed the petition.

On December 18, 1931, creditors of the alleged bankrupt met, and, after hearing the details of the difficulties of the bankrupt, its liabilities and assets, which included the

statement that the books of the company had been damaged by fire, a plan of adjustment was submitted whereby the creditors would receive 100 cents on the dollar. The plan provided for the liquidation of the business. A new corporation was to be organized, all stock of which was to be turned over to a committee of creditors as security, and the business of the new corporation was to be conducted under the supervision of the creditors' committee, which would be empowered to liquidate the business of such new corporation at any time and to distribute the proceeds of liquidation among the creditors. The bankrupt promised assistance to this plan.

During the period from the execution of the assignment, and long prior to the date of the filing of the petition herein, the creditors became fully advised as to the wrongs, if any, which were committed by the alleged bankrupt, including the partial destruction of some books and the loss of others. With such knowledge, they continued to liquidate under the assignment. On January 8, 1932, they considered the prosecution of the bankrupt's officers. The alleged bankrupt by the assignment had of course changed its position. The expense of carrying out the assignment had been paid and the creditors were instrumental in causing the assignment which is the act of bankruptcy complained of. Creditors who voluntarily assent and participate in the general assignment for the benefit of creditors, in the absence of fraud or misrepresentations, are estopped from thereafter filing or becoming parties to a petition in bankruptcy. U. S. v. Oregon Lumber Co., 260 U. S. 290, 43 S. Ct. 100, 67 L. Ed. 261; Robb v. Vos, 155 U. S. 13, 15 S. Ct. 4, 39 L. Ed. 52; In re Lucey Mfg. Co., 9 F.(2d) 313 (C. C. A. 2); Moulton v. Coburn, 131 F. 201 (C. C. A. 1); In re Romanow (D. C.) 92 F. 510. If their assent was obtained by fraud, they may withdraw it upon learning of the fraud. Here they did not do so promptly. They continued to proceed under the assignment with full knowledge of the facts. This was an election between proceeding under the assignment and pursuant to provisions of the Bankruptcy Act. Thereafter the creditors were estopped from instituting bankruptcy proceedings. All that is charged against the bankrupt by the appellant was known to them when they liquidated the business under the assignment and paid the expenses of the operation under it. The appellants may not now change their legal procedure. In re Payman, 40 F.(2d) 194 (C. C. A. 2); In re Commonwealth Lumber Co. (D. C.) 223 F. 667; Durham Paper Co. v. Seaboard Knitting Mills (D. C.) 121 F. 179. Merely because the assignment was not recorded and no inventory filed, as required by the state law, will not avoid the estoppel which has been created. In re Henry Campe & Co. (D. C.) 240 F. 433.

This doctrine prevails in England, and the rule there is that, when a creditor elects to deal with a deed of composition or arrangement as valid, instead of exercising his right to treat it as an act of bankruptcy or as void for noncompliance with the bankruptcy law, he is precluded from afterwards supporting a bankruptcy petition against the debtor. Ex parte Alsop, 1 De G. F. & J. 289, 45 Eng. Rep. 370; Ex parte Stray, 1867, L. R. 2 Ch. App. 374; Dunn v. Wyman, 1881, 51 L. J. (Q. B.) 623.

After thoroughly examining the bankrupt's affairs and learning thoroughly its business and carrying on its liquidation to an apparent completion, it would be erroneous to say that these appellants were misled into proceeding under this assignment. There is no ground upon which to base a claim of rescission for false and fraudulent representations in view of all these proceedings. Farnsworth v. Duffner, 142 U. S. 43, 12 S. Ct. 164, 35 L. Ed. 931; Shappirio v. Goldberg, 192 U. S. 232, 24 S. Ct. 259, 48 L. Ed. 419. Indeed, it would be an unnecessary proceeding to proceed in bankruptcy after the business of the alleged bankrupt had been fully liquidated.

Order affirmed.