## In re BROWN CO.

District Court, D. Maine, S. D.

April 6, 1936.

252

Cook, Hutchinson, Pierce & Connell, of Portland, Me., Carl C. Jones, of Concord, N. H., B. B. Sanderson, of Portland, Me., and Harold S. Davis, of Boston, Mass., for trustees.

Verrill, Hale, Booth & Ives, of Portland, Me., and John R. McLane, of Manchester, N. H., for Babcock & Wilcox Co. and Cameron Machine Co.

James C. Fanning, of Fulton, N. Y., for Dilts Machine Works.

PETERS, District Judge.

In each of these three petitions there is raised a question as to the right of a conditional vendor to repossess certain machinery or equipment installed in the mills of the Brown Company prior to the filing of the petition for reorganization.

Admittedly the laws of New Hampshire are applicable to the contracts of sale and rights thereunder.

There is no particular dispute about the facts. The Brown Company is a Maine corporation, organized in 1888, and located at Portland, Me., according to the certificate of incorporation, and having its principal offices at Portland. In 1919 it was registered as a foreign corporation in New Hampshire, where it has mills of substantial value, the greater part of which are in the city of Berlin, in addition to which it has certain mills in the adjoining town of Gorham, N. H. Its principal offices in New Hampshire are in the city of Berlin; the only offices in the town of Gorham being minor offices connected with the operation of the Gorham plant. The Brown Company also owns timberlands in various towns in New Hampshire.

The claimants are corporations organized under the laws of others states and are nonresidents of the state of New Hampshire.

Evidence has been introduced in description of the machinery and equipment desired to be recovered, and as to the nature and degree of its annexation to the realty, having particular reference to the claim of the trustee under a mortgage securing a large issue of bonds outstanding since 1926 and covering all the real estate of the debtor corporation, that the articles sold cannot be removed as against the mortgage. It is not necessary, however, to consider that feature of the case at the present time, for the reason that I hold that the property in question is not removable as against the trustees in possession under the appointment of the court, and to discuss the rights of the mortgagee at this stage of the proceedings would be premature.

The trustees have advanced one reason in all three cases in support of their position that the claimants are not entitled to repossession, and that reason I consider sound and conclusive. It is that the contracts of conditional sale were not recorded as required by the laws of New Hampshire. The applicable statute of that state, passed in 1926 (Pub.Laws N.H.1926, c. 216, §§ 27–30), provides that no lien on personal property, sold conditionally and passing into the hands of a conditional purchaser, shall be valid against attaching creditors unless the vendor takes a written memorandum, signed by the purchaser, covering the details of the purchase, and records it in the clerk's office of the town, either where the purchaser resides, if within the state, or where the vendor resides, if he resides within the state and the purchaser does not, or where the property is situated, if neither purchaser nor vendor resides in the state. It is further required that the memorandum to be recorded shall contain an affidavit to the effect that the lien is a just lien, etc. Twenty days are given within which to record the written memorandum referred to. If not recorded until after twenty days, it is only good against subsequent attaching creditors. The trustees here, by statute, have the rights of attaching creditors.

In the case of the sale made by the Babcock & Wilcox Company, the property sold was installed in the mill in Berlin. The contract witnessing the sale did not contain the affidavit required by the statute and was not recorded or attempted to be recorded anywhere.

In the case of the sale made by the Cameron Machine Company, the property

sold was installed in the mill in Gorham called the Cascade Mill. The contract was recorded in the office of the clerk of the city of Berlin, and was never recorded in the office of the clerk of the town of Gorham.

The contracts of the Dilts Machine Works, Inc., were recorded in Berlin and not in Gorham, where their machinery was also installed in the Cascade Mill.

■ The question is whether the statute was complied with in any of these cases. The necessity for strict compliance with the requirements of the statute is emphasized in General Motors Acceptance Corp. v. Brackett & Shaw Co., 84 N.H. 348, 150 A. 739, 70 A.L.R. 591, where the court held that the vendor has the burden of ascertaining that the town clerk has recorded the affidavit required by the statute, and that, despite the proper execution of the entire contract, if the town clerk fails to record the affidavit, the property may be attached by the vendee's creditors.

The suggestion of counsel for claimants that they made an effort in good faith to make a proper record and that the statute should be construed liberally in their favor on that account is met by the language of the court in Kendall v. Hastings, 81 N.H. 280, 125 A. 484, in which the court says: "The finding of the court 'that the plaintiff did all that a reasonable man would do to record his mortgage,' cannot affect the case. There is nothing in the statute, or in any case decided under it, which warrants a ruling that, if a person exercises reasonable care in securing the record of a mortgage, it shall be treated as recorded, even though it has not actually been placed on record. The statute is definite and specific, and must be complied with."

■ In behalf of the claimants it is urged that the recording in Berlin was in compliance with the statute because the purchaser, Brown Company, had its principal New Hampshire place of business at Berlin, and that the word "resides" in the statute is not to be construed as importing an absolute legal domicile, but simply a habitual presence which, in the case of a corporation, would be satisfied by the fact that it had its principal place of business in New Hampshire in that city; and some cases in New Hampshire are referred to as supporting that contention. I do not, however, consider them applicable to the situation of the corporations here involved. The purchaser here, Brown Company, was a Maine corporation located and having its principal place of business in Maine. It was a nonresident of New Hampshire, and had filed a certificate to that effect in New Hampshire. The fact that it did a large part of its manufacturing business in New Hampshire is not controlling.

"The residence of a corporation must be in the State which incorporated it, so that in any other State it is a non-resident, and the statute, requiring mortgages by non-residents to be recorded in the town where the property is, applies and must be enforced." Jones on Chattel Mortgages and Conditional Sales, § 253.

The court in Massachusetts, in Whitney v. Browne, 180 Mass. 597, 62 N.E. 979, 980, says: "That a corporation is a resident of the state by which it is created is too well settled to require a citation of authorities." Words and Phrases, Fourth Series, vol. 3, page 391; State v. Zangerle, 117 Ohio St. 436, 159 N.E. 823.

The case of Whitney v. Browne, supra, is very much in point.

I consider that the New Hampshire statute, in using the words "where the purchaser * * * or * * * vendor resides," in the case of a corporation, refers to a New Hampshire corporation, and that a corporation foreign to New Hampshire must be regarded as having a foreign residence, and cannot have the residence within the state that is referred to by the statute.

■ In the cases of Cameron Machine Company and Dilts Machine Works, Inc., where both vendors and vendee were nonresidents, the record should have been made in the town of Gorham where the property sold was "situated," and, not having been so made, the rights of the trustees when appointed inevitably became superior to the rights of the vendors.

■ In the case of Babcock & Wilcox Company, no record was made anywhere; but it is claimed that no record was necessary because by the New Hampshire statute twenty days were allowed in which to record the instrument, and that period had not elapsed when this petition under section 77B, Bankr.Act (11 U.S.C.A. § 207), was filed.

As to this contention, it should be noted that the contract with Babcock & Wilcox Company was not in form to be

recorded and could not be recorded, as it lacked the affidavit required by statute. It cannot be assumed that the contract would be subsequently changed or supplemented. But I do not consider that the filing and approval of the petition under 77B prevented the recording of the contract if it had been recordable. Nothing in the language of the order approving the petition prohibited the owner of this contract from recording it, and no stay has been ordered which could affect recording, and certainly there was nothing to prevent the claimants from applying to the court for permission to record the contract if there was any doubt of such a right.

If this company intended to obtain, if possible, an amendment to its contract with Brown Company, so that it could be recorded, and if it had believed that it would be prevented from recording the amended contract by reason of the commencement of these proceedings, it should have applied to the court immediately and before the expiration of the twenty-day period.

The failure of the claimant to comply with the recording statute will prevent repossession from the trustees in all these cases.

■ It should not be understood, however, that such failure is the only reason for denying the petition to reclaim from the trustees. The plan of reorganization "may deal with all or any part of the property of the debtor." Section 77B(b)(10), 11 U.S.C.A. § 207(b)(10).

If these contracts had taken the form of chattel mortgages by the purchaser, its interest or right of redemption unquestionably could be acted upon by the plan. Apparently in New Hampshire there is no practical distinction between a conditional sale contract and a chattel mortgage, so far as the rights of the parties are concerned. There is a right of redemption in both, both have to be foreclosed to eliminate the interest of the purchaser, and he can be sued separately on the debt.

The technical question as to where the title is would seem to be unimportant, especially in view of the fact that the New Hampshire statute is quite consistent with the theory of a property interest being in the purchaser with a lien reserved to the seller in a conditional sale contract. Throughout it speaks of the seller as having a lien on the property. The statute begins by saying, "No lien reserved on personal property sold conditionally and passing into the hands of the conditional purchaser, except a lien, * * * shall be valid."

The parties are required to swear that the "memorandum is made for the purpose of witnessing the lien and the sum due thereon as specified in said memorandum, and for no other purpose whatever and that said lien and the sum due thereon were not created for the purpose of enabling the purchaser to execute said memorandum, but said lien is a just lien," etc.

See Cutting v. Whittemore, 72 N.H. 107, 54 A. 1098, 1099, in which Judge Bingham, among other things, says:

"It has been decided in this state that a vendor who sells a chattel, reserving the title until the purchase price is paid, retains the general property therein, not as the absolute owner, 'but as collateral security, not differing materially from security by way of mortgage or other lien,' and that a transfer of the debt carries with it, as an incident, his interest in the chattel, in the same manner as the assignment of a mortgage debt would carry with it the mortgage. * * * 'The reservation of the title is but as security for the purchase price, and, if the property is recovered by the seller, he must deal with it as security, and with reference to the equitable rights of the purchaser.' * * *

"But it has been held that the conditional vendee, while in possession under the contract of sale, has an interest in the property that he may give away; * * * that he may sell; * * * that he may mortgage; * * * that his creditors may attach; * * * that it will pass to his assignee in insolvency; * * * and that a performance of the condition of the sale after a transfer of the vendee's interest, either by the vendee or his assignee, will vest the title in the assignee without further action by the vendor."

The Brown Company, conditional vendee of this machinery and equipment which was purchased of the three corporations mentioned on deferred payment plans, had the right to extinguish the "lien reserved on personal property sold conditionally and passing into the hands of the conditional purchaser" by paying the balance due on the contracts at any time before the right of redemption was foreclosed by legal proceedings taken in accordance with the New Hampshire law. The value of such a right of redemption as an asset would vary with the amount remaining due under

the contract, and might conceivably in some cases be a substantial part of the assets of a corporation in the process of reorganization. Such a right must be "property" which would pass to a trustee in bankruptcy and to trustees appointed in reorganization proceedings under 77B, and be subject to the operation of a plan of reorganization.

I conclude that in no view of the situation is any claimant here entitled to repossession, and decrees will be entered accordingly. This does not apply to a certain part of the Dilts machinery received by the Brown Company on trial and which all parties agree may be repossessed.